# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Tennessee

FILED
NOV 19 2025
Clerk, U.S. District Court
Eastern District of Tennessee
At Greeneville

| | |
|---|---|
| United States of America<br>v.<br>CAYDEN BROCK NEWBERRY<br><br>*Defendant(s)* | )<br>)<br>) Case No.<br>) 2:25-MJ-216 SEALED<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __June 1, 2025 through October 1, 2025__ in the county of __Washington__ in the __Eastern__ District of __Tennessee__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) and (e) | Knowingly Entice a Minor into Sexual Activity to Produce Visual Depictions |
| 18 U.S.C. § 2422(b) | Knowingly Entice a Minor into Engaging in Sexual Activity Using a Facility of Interstate Commmerce |
| 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1) | Knowingly Receive Child Sexual Abuse Material Using a Facility of Interstate Commerce |

This criminal complaint is based on these facts:
(See attached affidavit)

☑ Continued on the attached sheet.

*Gretchen Lorena Roberts*
Complainant's signature

FBI Special Agent Gretchen L. Roberts
Printed name and title

Sworn to by telephone and signed and transmitted by other reliable electronic means.

Date: 11/19/2025

*Cynthia Richardson Wyrick*
Judge's signature

City and state: Greeneville, TN

Cynthia Richardson Wyrick, U.S. Magistrate Judge
Printed name and title

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:25-MJ-216 |
| v. ) | JUDGE WYRICK |
| ) | TO BE SEALED |
| CAYDEN BROCK NEWBERRY ) | |

CRIMINAL COMPLAINT

I, Gretchen Lorena Roberts, the complainant in this case, state that the following is true to the best of my knowledge and belief:

COUNT ONE

The United States Attorney charges that from in or about June 1 through October 1, 2025 in the Eastern District of Tennessee and elsewhere, the defendant, CAYDEN BROCK NEWBERRY, did knowingly employ, use, persuade, induce, entice, or coerce the Minor Victim or knowingly attempted to employ, use, persuade, induce, entice, or coerce the Minor Victim to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, and CAYDEN BROCK NEWBERRY knew or had reason to know that such visual depictions would have been transported or transmitted using a means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or that such visual depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or such visual depictions had actually been transported or transmitted using a means or facility of interstate or

1

foreign commerce or in or affecting interstate or foreign commerce in violation of Title 18 U.S.C. § 2251(a) and (e).

## COUNT TWO

The United States Attorney charges that from in or about June 1 through October 1, 2025, in the Eastern District of Tennessee and elsewhere, the defendant, CAYDEN BROCK NEWBERRY, did unlawfully and knowingly use any facility or means of interstate or foreign commerce to persuade, induce, entice, or coerce or did attempt to unlawfully and knowingly use any facility or means of interstate or foreign commerce to persuade, induce, entice, or coerce any individual who had not attained the age of 18 years to engage in any sexual activity for which any person can be charged with a criminal offense, in violation of Title 18 United State Code (U.S.C.) § 2422(b).

## COUNT THREE

The United States Attorney charges that from in or about June 1 through October 1, 2025, in the Eastern District of Tennessee and elsewhere, the defendant, CAYDEN BROCK NEWBERRY, did knowingly receive child pornography as defined in Title 18, United States Code § 2256(8), that had been mailed, or shipped, or transported in interstate or foreign commerce by any means, including by computer.

[18 U.S.C. § 2252A(a)(2)(A) and (b)(1)]

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Gretchen Lorena Roberts, being duly sworn, do hereby state the following:

2

1. I have been Special Agent (SA) of the Federal Bureau of Investigation (FBI) since December 2022, and I am currently assigned to the Nashville Division, Johnson City Resident Agency (JCRA). I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. Through the course of my training and experience, I am familiar with investigations and enforcement of federal child pornography laws in which electronic devices are used to produce, transmit, collect, and store child sex abuse material (CSAM). I have knowledge with how criminals use electronic devices, such as mobile telephones, to store information related to criminal activity and had the opportunity to observe and review examples of CSAM (as defined in 18 U.S.C. § 2256).

2. I know the following from information I received during the investigation, including from other investigators, police officers, and/or from other individuals. Furthermore, this affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter. Based on the facts set forth in this affidavit, I believe there is probable cause that violations of 18 U.S.C. §§ 2251, 2422, and 2252A, have been committed by NEWBERRY.

## JURISDICTION

3. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense(s) being investigated.

3

## DEFINITIONS

4. The following definitions may, or may not, apply to this Affidavit:

   a. "Visual Depictions" include undeveloped file, videotape, and/or data stored on computers or by other electronic means, which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether stored in a permanent format. *See 18 U.S.C. § 2256(5)*.

   b. "Minor" means any person under the age of eighteen years. *See 18 U.S.C. § 2256(1)*.

   c. "Child erotica" as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minor but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

   d. "Child Sexual Abuse Material," as used herein, includes the definition in 18 U.S.C. § 2256(8) – any visual depiction of sexually explicit conduct where: (a) the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct; (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct –as well as any visual depiction, the production of

4

which involves the use of a minor engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

e. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. See *18 U.S.C. § 2256(2)*.

f. The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, paintings), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing), or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as disk drives, CD-ROMs, digital video disks (DVDs), Blu-ray discs (BDRs), personal digital assistants (PDAs), Multi Media Cards (MMCs), Solid-State Drives (SSDs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, electronic notebooks, flash or thumb-drives, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

g. The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high-speed data processing devices performing logical,

arithmetic or storage functions, including desktop computers, notebook or laptop computers, mobile telephones or cellular devices, tablets, server computers, and network hardware.

## CHARACTERISTICS COMMON TO INDIVIDUALS WHO HAVE A SEXUAL INTEREST IN CHILDREN OR WHO PRODUCE, RECEIVE, DISTRIBUTE, AND/OR POSSESS CHILD PORNOGRAPHY

5. Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who have a sexual interest in children and/or produce, receive, distribute, and/or possess images of child pornography:

   a. Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

   b. Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

6

c. Such individuals almost always possess and maintain child pornographic material in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain those materials and child erotica for many years.

d. Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, or in cloud-based online storage, to enable the individual to view the child pornography images, which are valued highly. Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis.

e. Importantly, evidence of such activity, including deleted child pornography, can often be located on these individuals' computers and digital devices using forensic tools. Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.[1]

---

[1] *See United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (concluding that 5-year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology"); *see also United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012) (Posner, J.) (collecting cases, e.g., *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010); *United States v. Richardson*, 607 F.3d 357, 370-71 (4th Cir. 2010); *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010)).

7

f.  Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain contact information (e.g., online messaging accounts, email addresses, etc.) of individuals with whom they have been in contact and who share the same interests in child pornography.

g.  Such individuals prefer not to be without their child pornography for any prolonged time. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

h.  Even if the individual uses a portable device – such as a mobile telephone or cellular device – to access the Internet and child pornography, it is more likely than not that evidence of this access will be stored in the device and/or device account, as set forth in Attachment A.

## BACKGROUND REGARDING THE "764" GROUP

6. The 764 group (hereinafter "764") is a decentralized network of nihilistic violent extremists who engage in criminal conduct aimed at destroying civilized societies by inciting civil unrest, corruption, and exploiting vulnerable populations—often underage children, for the purpose(s) of ending the new world order (i.e. the United States Government and Western civilization).

7. 764 extremists exist on publicly available online platforms such as social media sites, gaming platforms, and mobile applications commonly used by young people. 764

extremists systematically target underage females, but anyone — juveniles, adults, males, and females — can be targeted. Victims are typically between the ages of 10 and 17 years old, but the FBI has observed victims as young as 9 years old. These violent actors target other vulnerable populations as well, including those who struggle with a variety of mental health issues such as depression, eating disorders, or suicide. Threat actors often groom their victims by first establishing a trusting or romantic relationship before eventually manipulating and coercing them into engaging in harmful behavior designed to shame and isolate them.

8. Tactics used by 764 extremists often include extorting or blackmailing victims via swatting[2] or doxxing[3] if they do not comply with demands. Victims are also manipulated or coerced into producing CSAM, as well as other images/videos depicting animal cruelty and self-harm (i.e. cutting, stabbing, or fansigning[4]). Additionally, extremists will threaten to share the explicit images/videos of the victims with their family and friends or post the images/videos to the internet. Extremists control their victims through building immense fear, and many have the end-goal of forcing victims into live-streaming their own self-harm, or suicide, for the network's entertainment or threat actor's own sense of fame.

---

[2] *Swatting* is the action or practice of making false emergency calls to police, or other emergency services, to bring about the dispatch of armed police officers (i.e. SWAT teams) to a particular location.

[3] *Doxxing* is the action or practice of obtaining and/or publishing personally identifiable information on the internet, usually with criminal or malicious intent.

[4] *Fansigning* is the act of writing, cutting, or carving specific numbers, letters, symbols, names, or insignia onto one's own body.

## INVESTIGATION AND FACTS ESTABLISHING PROBABLE CAUSE

9. On or about September 23, 2025, the FBI Newark Division was notified by the Somerset County Prosecutor's Office (New Jersey) regarding a report made on September 14, 2025, by the parent of a MINOR VICTIM[5] who produced CSAM and committed self-harm at the direction of an unknown male who investigators eventually identified as CAYDEN NEWBERRY. According to the report, the MINOR VICTIM met NEWBERRY online via Roblox several months prior and the conversation moved to Discord, which the MINOR VICTIM accessed through a PlayStation 5. NEWBERRY and the MINOR VICTIM used Discord to video chat. In August 2025, NEWBERRY sent a cellular telephone to the MINOR VICTIM via DoorDash so they could exclusively and discreetly communicate.

10. The MINOR VICTIM stopped answering NEWBERRY shortly after receiving the phone and, out of jealousy and anger, NEWBERRY threatened to come to the MINOR VICTIM'S residence. Following this threat, NEWBERRY coerced the MINOR VICTIM into sending CSAM and committing acts of self-harm. This interaction with NEWBERRY escalated into other adults joining the chat and requesting additional acts of self-harm from the MINOR VICTIM.

11. Legal process conducted by Somerset County Prosecutor's Office identified the DoorDash transaction related to the delivery of the cellular telephone to MINOR VICTIM'S

---

[5] The identity of MINOR VICTIM, date of birth July 8, 2012, is known to law enforcement and not included in this document to protect the MINOR VICTIM's privacy as a victim of federal child exploitation crimes.

residence on August 4, 2025. A review of subscriber information from the DoorDash customer account revealed the following:

    a. Customer Name: Zoit Slams

    b. Phone: 1-423-930-5481 (x5481)

    c. Email Address: rsbtpb97m5@privaterelay.appeid.com

    d. Address: 114 West Poplar Street, Johnson City, Tennessee (TN) 37604

    e. IP Addresses: 152.86.88.138, 174.212.96.200, 174.212.97.217, 2604:f6c0:485d:3900:1c7c:bbba:7b3a:e424

12. On September 18, 2025, a preliminary search of the IP address returned to ISP Brightridge out of Johnson City, TN. Cellular telephone number x5481 resolved to Verizon Wireless and open-source research revealed a registered Snapchat account, cayden20255356 (username), with a display name of Cayden.

13. A subpoena was issued to DoorDash for phone number x5481 requesting records from January 1, 2025 through October 23, 2025. DoorDash provided returns showing 25 transactional records for that account. 24 of those transactions were delivered to 114 West Poplar St., Johnson City, TN 37604. One transaction was delivered to an address in Raritan, NJ, which law enforcement recognized as the MINOR VICTIM's address.

14. On September 25, 2025, Somerset County Prosecutor's Office provided NCMEC report CT195899203 regarding IP address 174.212.96.200, which was previously reported in DoorDash's records. A review of NCMEC report CT195899203 revealed that Kik provided a report to NCMEC for uploading videos of suspected child pornography involving the below user on or around June 28, 2024:

11

a. Email address: Charchar101@gmail.com

b. Username: gooning4lifee

c. Display Name: Zeek Goon

d. User ID: gooning4lifee_luq

e. IP Addresses: 71.87.187.197, 140.228.21.55. 146.70.121.199, 71.87.187.197, 174.212.161.186, and 174.212.96.200.

15. The referenced Kik user uploaded seven files consistent with CSAM[6], two being image files and four video files, and one image of an unclothed child.

16. A review of the NCMEC report identified IP Address 174.212.96.200 was also identified within the IP Address records provided by DoorDash showing Verizon IP address 174.212.96.200 last used August 11, 2025 per DoorDash.

17. As recently as November 17, 2025, law enforcement conducted surveillance on the PREMISIS and observed a male matching the description of NEWBERRY in the back of the residence.

18. On September 29, 2025, the MINOR VICTIM was forensically interviewed by the Somerset County Prosecutor's Office in New Jersey. The following information was provided by the MINOR VICTIM during the forensic interview:

---

[6] The files consisted of images and videos of a nude pubescent minor, sexual activity involving a pubescent minor, and/or lascivious exhibition of a pubescent minor.

12

a. MINOR VICTIM first met NEWBERRY on Roblox and was extorted into committing self-harm by carving or fansigning[7] his name onto her leg. Specifically, NEWBERRY instructed the MINOR VICTIM to write his name, Caden, onto the MINOR VICTIM's legs with a marker. Subsequently, other adults would join the chat and ask her to carve their initials into her leg with a sharp object. MINOR VICTIM followed the instructions and physically harmed herself while sending pictures and videos.

b. NEWBERRY purchased the MINOR VICTIM a phone at Target and sent it to her through DoorDash. The phone was delivered with a SIM card and PIN. The purpose of the phone was for NEWBERRY and the MINOR VICTIM to be in contact. The MINOR VICTIM downloaded Discord and Instagram, amongst other applications, to the new phone.

c. The MINOR VICTIM recalled that NEWBERRY's Discord username was "Seven" followed by several other numbers. This username was on the MINOR VICTIM's "blocked" list on Discord.

d. The MINOR VICTIM described NEWBERRY as nineteen years old with long hair, blue eyes, and facial hair described as "stubble."

e. The MINOR VICTIM and NEWBERRY communicated often via calls on Discord. NEWBERRY also provided a Telegram username to the MINOR VICTIM for them to communicate.

---

[7] *Fansigning* is the act of writing, cutting, or carving specific numbers, letters, symbols, names, or insignia onto one's own body

13

f. NEWBERRY threatened to extort the MINOR VICTIM unless the MINOR VICTIM got on camera and masturbated on Facetime. NEWBERRY used a computer during this instance.

g. A day or so later, NEWBERRY added the MINOR VICTIM to a group chat with other accounts on Discord which consisted of other extorters who made girls carve their name onto their arms. The MINOR VICTIM left the chat and blocked NEWBERRY due to not trusting him.

h. A different Discord user informed the MINOR VICTIM about the process for gaining admission to a 764 group, and that the content produced by the MINOR VICTIM was used by individuals for the purpose of admission. This Discord user informed MINOR VICTIM of fansigns, as well as sexually explicit photos and videos being sought by members of the 764 group. Individuals obtained this content and shared it with a "boss" in order to join the group.

i. The MINOR VICTIM described the group "T7K" on RecRoom[8] as similar to the 764 groups, which the MINOR VICTIM was aware of because she has previously played RecRoom.

j. NEWBERRY showed the MINOR VICTIM a Telegram group chat where images and content were shared. The cover photo of the Telegram group showed a girl's arm with the number 7 and other characters carved/cut into the skin. The image

---

[8] *RecRoom* centers around users voluntarily accessing various in-game experiences (referred to as "rooms") created by Rec Room Inc. (referred to as "Rec Room Originals"), as well as custom rooms created by players. These rooms can be accessed using in-game menus, teleports found in other rooms (referred to as "room doors"), as well as through invitations sent by other users.

14

was described by MINOR VICTIM as showing deep cutting into the flesh of a person. MINOR VICTIM was told that groups are moderated, and in order to gain admission to the groups, you are required to send at least two pieces of content. The MINOR VICTIM described "content" as images or video(s) showing either blood and a name or full nudity with a name.

k. MINOR VICTIM was specifically instructed by NEWBERRY to send photos and videos of herself naked and masturbating. The MINOR VICTIM understood "masturbation" as "pleasuring yourself" by "playing with your private parts."

l. MINOR VICTIM sent CSAM on multiple occasions to at least three different individuals, including NEWBERRY. Videos the MINOR VICTIM sent to NEWBERRY showed her masturbating with a hairbrush, and her vagina was visible. When NEWBERRY learned the MINOR VICTIM owned thigh-high stockings, NEWBERRY requested the MINOR VICTIM create videos wearing the stockings. NEWBERRY also requested the MINOR VICTIM say his name, "Caden," during the masturbation video.

m. NEWBERRY showed his face to the MINOR VICTIM, and the photos he sent to the MINOR VICTIM looked like they were captured with a computer.

n. The MINOR VICTIM and NEWBERRY communicated frequently through calls. The MINOR VICTIM described NEWBERRY's voice as sounding American. NEWBERRY and the MINOR VICTIM played Roblox while on the phone with each other. During one of their conversations, NEWBERRY explained the

15

meaning of "fansigning" to the MINOR VICTIM. He also talked about extorting other people through Telegram.

o. The MINOR VICTIM and NEWBERRY communicated over the summer every day for at least a week or two.

p. MINOR VICTIM was shown a photograph of an individual known to investigators to be NEWBERRY. The MINOR VICTIM identified the photograph as being "Caden," whom MINOR VICTIM had seen during conversations.

## CONCLUSION

19. Based on the facts set forth in this affidavit, I believe there is probable cause that violations of 18 U.S.C. §§ 2251(a) and (e), 2422(b), and 2252A(a)(2)(A) and (b)(1) have been committed by CAYDEN NEWBERRY.

20. The above information is true and correct to the best of my knowledge, information, and belief.

## REQUEST FOR SEALING

21. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and

16

search warrants via the Internet and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

*Gretchen Lorena Roberts*

Gretchen Lorena Roberts
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn to me by telephone or other reliable electronic means on November 19, 2025:

CYNTHIA RICHARDSON WYRICK
UNITED STATES MAGISTRATE JUDGE

17